**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

LORA BURNETT,

>    *Plaintiff,*

>   v.

COLLIN COUNTY COMMUNITY
COLLEGE DISTRICT, a municipal entity of
the State of Texas;

H. NEIL MATKIN, in his individual and
official capacities as President of Collin
College;

ANDREW HARDIN, JAY SAAD, JIM
ORR, DR. RAJ MENON, STACEY ANN
ARIAS, DR. J. ROBERT COLLINS, DR.
STACEY DONALD, GREG GOMEL, and
FRED MOSES, each in their individual and
official capacities as Members of the Board
of Trustees of Collin Community College;

>    *Defendants.*

Civil Action No. 4:21-cv-857

**JURY TRIAL DEMAND**

---

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**

---

GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622015
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
FOUNDATION FOR INDIVIDUAL RIGHTS IN
EDUCATION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org
josh.bleisch@thefire.org
*Pro Hac Vice* Motions forthcoming

JT MORRIS
TX Bar No. 2409444
JT MORRIS LAW, PLLC
1105 Nueces Street
Austin, TX 78701
Tel: (512) 717-5275
jt@jtmorrislaw.com

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

JURISDICTION AND VENUE ........................................................................................... 2

THE PARTIES .................................................................................................................... 3

FACTUAL ALLEGATIONS ............................................................................................... 5

    Lora Burnett Uses Her Personal Twitter Account to Comment on
    National Politics. .......................................................................................................... 5

    Burnett Uses Her Personal Twitter Account to Comment on Collin
    College's Responses to the COVID-19 Pandemic Under President
    Matkin. ......................................................................................................................... 8

    After Rep. Jeff Leach Prematurely Announces Burnett's Termination on
    Twitter, Collin College Unlawfully Terminates Her for Speaking on
    Matters of Public Concern. ........................................................................................ 11

    Defendants Have Adopted a Custom or Practice of Retaliating Against
    Professors Who Speak on Matters of Public Concern. ............................................. 13

    Collin College's Actions Have Caused a Deprivation of Rights, and
    Economic and Emotional Damage to Burnett. .......................................................... 19

FIRST CAUSE OF ACTION
Monell Claim Under 42 U.S.C. § 1983 (Against Defendant Collin
Community College District) ............................................................................................. 20

SECOND CAUSE OF ACTION
First Amendment Retaliation under 42 U.S.C. § 1983 (Against All
Individual-Capacity Defendants) ...................................................................................... 21

THIRD CAUSE OF ACTION
First Amendment Retaliation under 42 U.S.C. § 1983 (Against All
Official-Capacity Defendants) .......................................................................................... 22

FOURTH CAUSE OF ACTION
Declaratory Relief Under 28 U.S.C. §§ 2201, et seq. (Against All Defendants) ............. 24

PRAYER FOR RELIEF ..................................................................................................... 25

DEMAND FOR JURY TRIAL .......................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Burleson v. Collin Cnty. Cmty. Coll. Dist.*,
   No. 4:17-CV-00749, 2019 WL 2266633 (E.D. Tex. Jan. 14, 2019) ................................... 6, 22

*Connick v. Myers*,
   461 U.S. 138 (1983)................................................................................................. 23

*Environment Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
   824 F.3d 507 (5th Cir. 2016) ................................................................................. 25

*Gonzalez v. Ysleta Ind. Sch. Dist.*,
   996 F.2d 745 (5th Cir. 1993) ................................................................................. 23

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)................................................................................................. 6, 22

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986)................................................................................................. 23

*Perry v. Sindermann*,
   408 U.S. 593 (1972)................................................................................................. 21

*Pickering v. Bd. of Educ.*,
   391 U.S. 563 (1968)................................................................................................. 3, 5, 24

**Statutes:**

28 U.S.C. § 1391(b) ...................................................................................................... 5

28 U.S.C. § 1331 ............................................................................................................ 5

28 U.S.C. § 1343 ............................................................................................................ 5

28 U.S.C. § 2201 ............................................................................................................ 5, 25

28 U.S.C. § 2202 ............................................................................................................ 5

42 U.S.C. § 1983 ............................................................................................................ 5, 22, 23, 24

42 U.S.C. § 1988 ............................................................................................................ 5, 27

Federal Rule of Civil Procedure 38 ............................................................................ 28

iii

Tex. Educ. Code § 1.001(a) ........................................................................... 7

Tex. Educ. Code § 130.0011 ......................................................................... 7

Tex. Educ. Code § 130.082(d). .................................................................. 6, 7

Tex. Educ. Code § 130.084............................................................................ 7

**Other Authorities:**

Bill Zeeble, *Collin College Doesn't Post a COVID-19 Dashboard. Faculty,
    Students Ask Why*, KERA News (Nov. 11, 2020) .................................... 12

Bill Zeeble, *Collin College First Amendment Fight Moves to the Ballot Box With
    Spring Board Election*, KERA NEWS (Apr. 22, 2021) ............................. 18

Bill Zeeble, *Two Collin College Professors Say They're Being Dismissed After
    Criticizing COVID-19 Policies*, KERA NEWS (Feb. 5, 2021) .................. 16

Michael Vasquez, *'That Man Makes Me Crazy' How One President Shattered
    Norms, Played Down Covid-19, and Sent His Critics Packing*, CHRONICLE OF
    HIGHER EDUCATION (Apr. 13, 2021) ..................................................... 19

Talia Richman, *'Fear Is Not a Core Value': Protesters Call on Collin College
    Board to Act After 3 Professors Pushed Out*, DALLAS MORNING NEWS (Mar. 3,
    2021) ........................................................................................................ 17

*Third Professor at Texas Community College Effectively Fired After Criticizing
    School's Leadership*, PEN AMERICA (Mar. 2, 2021) ............................. 20

Valeria Olivares & Talia Richman, *Faculty Dismissals at Collin College Under
    Review by National Professors Association*, DALLAS MORNING NEWS (May 20,
    2021) ........................................................................................................ 20

## INTRODUCTION

1.      Like millions of Americans over the last two years, history professor Lora Burnett expressed her views on the 2020 presidential election and the COVID-19 pandemic online. Although it is well established that public employers violate the First Amendment rights of their employees when they terminate them for speaking out on important public issues, that is exactly what Collin County Community College District ("Collin College") and its top officials did to Burnett. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

2.      In October 2020, Burnett posted tweets on her personal Twitter account expressing her frustration with then-Vice President Michael Pence during the vice-presidential debate. Three months later, Burnett tweeted again through her personal Twitter account, this time criticizing Collin College President H. Neil Matkin for his response to the COVID-19 pandemic on campus and lamenting the death of a fellow Collin College faculty member, caused by COVID-19.

3.      Burnett sent these tweets from her personal device, outside the classroom, and on her own time. The tweets were unrelated to, and did not affect, her teaching in her classroom or her other duties as a faculty member at Collin College.

4.      Nevertheless, Collin College issued Burnett a warning letter and ultimately terminated her employment because of these tweets. Collin College's action was spurred by a text message sent by Texas State Representative Jeff Leach to President Matkin. In response to Rep. Leach's text messages, President Matkin replied that he would "deal with" Burnett. Rep. Leach publicly tweeted about Burnett's termination before it was announced to her, making clear his involvement in her termination.

5.      Burnett was not the only professor whom Collin College terminated for speaking out on important public issues: It has terminated two other professors and disciplined a third for the same reason.

6.      Because Collin College does not have a tenure system for professors, Burnett and others had no protection from Collin College's custom or practice of terminating professors for speaking out on important public issues.

7.      Collin College's unlawful discipline of professors exercising their First Amendment rights has itself become a topic of public controversy, attracting significant media coverage, resulting in hundreds of individuals protesting the terminations at Board of Trustees meetings, and drawing the attention of free speech and academic organizations across the country.

8.      By punishing Burnett for speaking on matters of public concern, Defendants have violated the First Amendment. *See Pickering*, 391 U.S. at 574. Burnett now files this lawsuit to vindicate her First Amendment rights.

## JURISDICTION AND VENUE

9.      This action arises under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

10.     Specifically, Plaintiff seeks declaratory and injunctive relief against the official-capacity Defendants and a ruling that Defendants violated Burnett's right to free speech and engaged in a custom or practice of unconstitutionally retaliating against professors for speaking on matters of public concern. Burnett also seeks compensatory and punitive damages against Defendant Collin Community College District and the individual-capacity Defendants for violations of her right to free speech.

11.     Accordingly, this Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because at least one of the Defendants resides in this District and all Defendants are residents of the State of Texas.

13.     Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Burnett's claims occurred in Collin County, Texas, which is located in the Sherman Division of the Eastern District of Texas.

## THE PARTIES

**Plaintiff**

14.     Plaintiff Lora Burnett is a citizen of the United States and a current resident of California. At all times relevant to the Complaint, Burnett was a resident of Collin County, Texas.

15.     At all times relevant to this Complaint, Burnett was employed by Collin College as a Professor of History at the College's Spring Creek and Wylie campuses. Burnett is suing in order to vindicate her constitutional rights.

**Defendants**

16.    Defendant Collin County Community College District is an independent political subdivision of the State of Texas, organized under the laws of the State of Texas at Education Code § 130.0011 *et seq.* It is a municipal entity subject to liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Burleson v. Collin Cnty. Cmty. Coll. Dist.*, No. 4:17-CV-00749, 2019 WL 2266633 (E.D. Tex. Jan. 14, 2019).

17.    Defendant H. Neil Matkin is the President of Collin College. He is responsible for the operations of Collin College, and has been delegated the final decisionmaking authority to employ administrative personnel, faculty, and other full-time personnel for Board-approved budgeted positions. *See* Collin College's Board Policy Manual, DD(LOCAL)-X; *see also* Tex. Educ. Code § 130.082(d). President Matkin caused the Board of Trustees to not renew Burnett's employment, resulting in the deprivation of her constitutional rights. President Matkin has been employed by Collin College since April 6, 2015. He is sued in his individual and official capacities.

18.    Defendants Andrew Hardin, Jay Saad, Jim Orr, Dr. Raj Menon, Stacey Anne Arias, Dr. J. Robert Collins, Dr. Stacey Donald, Greg Gomel, and Fred Moses are members of the Board of Trustees for Collin College. The Board of Trustees as a body has the "exclusive power and duty to govern and oversee the management of the public schools of the district," the power to hold real and personal property, and the power to sue and be sued. *See* Collin College Board Policy Manual, BAA (Legal)-LJC (citing Tex. Educ. Code §§ 1.001(a), 130.082(d), 130.084). The Board of Trustees is a final policymaker for the Collin Community College District. The members of the Board of Trustees are sued in their individual and official capacities.

19.     The Board of Trustees purport to be able to fire any employee for any reason, or for no reason at all. Collin College Board Policy Manuel, DMAB (Legal) ("The board of trustees may decide by vote or inaction not to offer any employee further employment with the college district beyond the term of the contract for any reason or no reason.").

20.     At all relevant times, all Defendants were acting under the color of state law.

## FACTUAL ALLEGATIONS

***Lora Burnett Uses Her Personal Twitter Account to Comment on National Politics.***

21.     Plaintiff Lora Burnett was a part-time lecturer at Collin College from 2015 to 2017, and returned as a full-time history professor at Collin College in 2019.

22.     Burnett received a Bachelor's Degree in English from Stanford University, and a Master's Degree and a Ph.D. in Humanities - History of Ideas from the University of Texas at Dallas.

23.     Burnett maintains a personal Twitter account, which she created in 2012, before her employment by Collin College. At all times relevant to the Complaint, on that account she prominently disclaimed that she was speaking strictly on her own behalf, stating: "[t]weets do not rep[resent] my employer."

24.     During the October 2020 vice-presidential debate, Burnett tweeted several times about then-Vice President Pence, saying, "the moderator needs to talk over Mike Pence until he shuts his little demon mouth up," and retweeted another user's post referring to Pence as a "scumbag lying sonofabitch."

25.     On October 8, 2020, a conservative media outlet called *Campus Reform* published tweets from professors across the country criticizing Vice President Pence during the vice-presidential debate. Burnett's tweets were included in the *Campus Reform* article, which referenced Burnett's employment at Collin College.

26.     On October 9, Fox News covered the article by *Campus Reform* and highlighted Burnett.

27.     As a result of these articles, Burnett received several emails on her Collin College email account from members of the public who attacked her comments on Twitter.

28.     That same day, Matkin sent an email to an internal faculty listserv warning that the  "execution of [the college's] personnel policies will not be played out in a public manner." He also noted that "college constituents" and "legislators" had contacted the college about faculty members' tweets about the debate.

29.     One of the legislators who contacted the College regarding the vice-presidential debate was Representative Jeff Leach, a member of the Texas House of Representatives.

30.     Rep. Leach exchanged text messages with President Matkin, asking if Burnett was "paid with taxpayer dollars."

31.     In response to Rep. Leach's text messages, President Matkin replied that he would "deal with it."

32.     On October 13, 2020, the American Historical Association, the "largest association of professional historians in the world," sent President Matkin a letter asking him not to take disciplinary action against Burnett. The American Historical Association further explained that President Matkin would be violating the First Amendment by punishing Burnett because her "public statements [were] made wholly outside of the context of her employment at Collin College." The letter concluded by stating that "[w]e trust that Collin College will respect and protect Dr. Burnett's rights under the First Amendment to the US Constitution."

33.     On the same day as the American Historical Association's warning that disciplining Burnett for her comments would violate the First Amendment, the Dean of Academic Affairs and Workforce at Collin College, Daphne Babcock, issued Burnett an "Employee Coaching Form."

34.     According to the College's website, an "Employee Coaching Form" is used to respond to "behavior or performance that has previously been discussed informally but is still not meeting expectations." The Employee Coaching Form makes clear that "failure to meet and sustain acceptable performance or behavior may result in formal disciplinary action."

35.     The "Employee Coaching Form" provided that:

> This is to serve as acknowledgement that you are entitled to your views and may freely post these views on your personal social media.
>
> This is also to clearly communicate that you are not to use Collin College systems or resources to engage in private or personal conversations. If you are contacted through you Collin.edu account, you are not to respond from the college email system. You should use your personal email account on any and all personal communication.
>
> In addition, please refrain from copying what appears to be private or personal communications to others via their Collin.edu email accounts. The Collin.edu system is for professional communications and those related to the educational mission of the college.

7

36.     The "Employee Coaching Form" was meant to, and in fact did, punish Burnett and chill her from continuing to engage in speech on matters of public concern.

37.     On October 15, 2020, the Foundation for Individual Rights in Education (FIRE) sent President Matkin a letter regarding the situation. That letter outlined Burnett's First Amendment free speech rights and explained that Collin College's recent discipline of Burnett was unconstitutional.

38.     On October 19, 2020, Collin College General Counsel Monica Velazquez responded to FIRE's letter and refused to withdraw the October 13, 2020 "Employee Coaching Form."

39.     On October 22, 2020, FIRE replied with a second letter to Collin College, stating that the College's refusal to withdraw Burnett's "Employee Coaching Form" only reinforced its concerns.

***Burnett Uses Her Personal Twitter Account to Comment on Collin College's Responses to the COVID-19 Pandemic Under President Matkin.***

40.     While Collin College was focused on disciplining Burnett for her off-campus political commentary, Burnett and other faculty were growing increasingly distressed about President Matkin's response to the COVID-19 pandemic at Collin College.

41.     Throughout the COVID-19 pandemic and ensuing public health emergency, Burnett and other faculty felt that President Matkin consistently downplayed the risks posed by COVID-19.

42.     Burnett was especially concerned after an August 18, 2020 email from President Matkin to the Board of Trustees was forwarded to college staff.

43.     In the email, President Matkin celebrated the College's increased enrollment amidst the COVID-19 pandemic and offered his own "truth," claiming that the number of individuals who were dying from COVID-19 was "clearly inflated."

44.     President Matkin explained: "If you find better numbers, please enlighten me, but, from my limited perspective, the effects of this pandemic have been blown utterly out of proportion across our nation and reported with unfortunate sensationalism and few facts regardless of which news outlet one tunes into. It has become political in a pivotal election year and frankly, it has made our jobs all the more difficult."

45.     Burnett was shocked by President Matkin's concern for increasing enrollment (and increased revenue brought in by increased enrollment) instead of improving safety for faculty and students.

46.     Burnett was also distressed because Collin College intentionally obscured information regarding cases of COVID-19 on its campus, while other community college systems in Texas maintained online dashboards to share total numbers of COVID-19 cases among students, faculty, and staff.

47.     For instance, on October 2, 2020, a Collin College student died of complications from COVID-19, but the college community was not notified about that death until President Matkin's announcement at the Board of Trustees meeting on October 29—a full twenty-seven days afterward.

48.     Collin College's response to the COVID-19 pandemic also garnered media attention. *E.g.*, Bill Zeeble, *Collin College Doesn't Post a COVID-19 Dashboard. Faculty, Students Ask Why*, KERA News (Nov. 11, 2020), *available at* https://www.keranews.org/health-science-tech/2020-11-11/why-does-collin-college-refuse-to-publish-online-campus-covid-updates.

49.     In one article, KERA News reported that "[t]he lack of transparency about coronavirus cases in this North Texas community college system is causing concern among some faculty and students." *Id.*

50.     In response to a public records request by a Collin County resident, Collin College finally released data showing the number of faculty and students who contracted COVID-19.

51.     The data released showed that from August to October 2020, 179 students and 15 faculty members contracted COVID-19.

52.     Even after facing public criticism, Burnett felt that President Matkin continued to downplay to faculty the risk of COVID-19 on campus.

53.     In one instance, President Matkin announced the death of a Collin College professor in a November 20, 2020 email to staff with the subject line "College Update and Happy Thanksgiving!" In the five-page email, President Matkin devoted one line to the deceased student and faculty member: "To date, we are aware of one Collin College student who has passed away from complications from Covid 19 and, as of last week, one faculty member."

54.     Like other faculty who received President Matkin's email, Burnett was dismayed because she was previously unaware that any faculty member had died.

55.     Burnett later learned that the family of the deceased faculty member believed that the professor was exposed to COVID-19 while teaching.

56.     On January 13, 2021, Burnett shared on Twitter a link to an obituary for Professor Ralph Gregory Hendrickson, whom she had known to have been a professor at Collin College, and wrote, "Another @collincollege professor has died of COVID."

57.     On January 19, 2020, Babcock issued Burnett a "Level 1 warning."

58.     Before tweeting, Burnett had checked Hendrickson's "RateMyProfessor" page, which included a December 15, 2020, review posted by a student listing Hendrickson as teaching at Collin College.

59.     The written warning declared Burnett's tweets were "not accurate," stating Hendrickson was a "former employee of the college and not a Collin College professor." The warning also said that "had [Burnett] first verified the accuracy of the information, [she] would have learned that Mr. Hendrickson is not a Collin College professor and, in fact, has not taught at the college for several years." The warning also instructed Burnett "to verify objective facts included in your publicly posted statements," citing a Collin College policy described as requiring faculty members "to strive for accuracy when speaking or writing as private citizens."

***After Rep. Jeff Leach Prematurely Announces Burnett's Termination on Twitter, Collin College Unlawfully Terminates Her for Speaking on Matters of Public Concern.***

60.     On February 16, 2021, Burnett was surprised to see Rep. Leach tweet that Burnett had been terminated, which he characterized in his Twitter post as a "BIG WIN."

61.     In fact, Collin College had not yet informed Burnett of their decision to terminate her employment.

62.     Burnett responded to Rep. Leach on Twitter stating that she had not been terminated.

63.     In response, Rep. Leach tweeted an image of a ticking clock, implying her time as a Collin College employee was limited.

64.     Nine days later, on February 25, 2021, the College notified Burnett that her contract would not be renewed, citing "insubordination, making private personnel issues public that impair the college's operations, and personal criticisms of co-workers, supervisors, and/or those who merely disagree with you."

65.     In the College's Notice of Non-Renewal, the College stated that Burnett had failed to comply with the "*Employee Standards of Conduct* under Board Policy DH(EXHIBIT) and the *Faculty Statement of Professional Ethics*."

66.     On March 5, 2021, Burnett filed a formal complaint with Collin College appealing her non-renewal.

67.     In her formal complaint, Burnett stated that the non-renewal violated Collin College policy by retaliating against her for her exercise of constitutionally protected speech.

68.     On April 21, 2021, the Resolution Review Panel denied Burnett's formal complaint.

69.     Burnett's online comments concerning the vice-presidential debate and her criticism of President Matkin's handling of the COVID-19 pandemic did not impair the functioning of Collin College or cause any disruption on campus.

70.     Collin College did not cancel any classes due to Burnett's online comments concerning the vice-presidential debate or her criticism of President Matkin's handling of the COVID-19 pandemic.

71.     Burnett's online comments concerning the vice-presidential debate and her criticism of President Matkin's handling of the COVID-19 pandemic did not impact her ability to teach her courses.

***Defendants Have Adopted a Custom or Practice of Retaliating Against Professors Who Speak on Matters of Public Concern.***

72.     Statements and actions by Defendants Collin College, President Matkin, and the Board of Trustees evince a custom or practice of terminating professors who speak out on matters of public concern.

73.     At a candidates' forum in 2015, then-Collin College Board of Trustees Chair Robert Collins said that academia's tenure system allows "ultra-liberal, anti-capitalism, socialistic professors" to become entrenched. Accordingly, Collins said that the lack of a tenure system at Collin College is "by design."

74.     Since the COVID-19 pandemic began, Defendants have used their lack-of-tenure "system" to implement an unconstitutional policy of terminating or disciplining professors who speak out on matters of public concern, including at least three other faculty members in addition to Burnett: Suzanne Jones, Audra Heaslip, and Michael Phillips.

75.     Professors Jones and Heaslip were both officers of the Texas Faculty Association (TFA) chapter at Collin College. TFA is the statewide affiliate of the Texas State Teachers Association and the National Education Association and works to protect the rights of higher education faculty.

76.     On September 22, 2021, Jones filed a lawsuit alleging, among other claims, violations of the First Amendment.

77.     Jones alleged that Collin College, President Neil Matkin, and Vice President Toni Jenkins retaliated against her by authorizing the non-renewal of Jones's teaching contract due to her expression regarding COVID-19 and her association with TFA.

78.     Jones also alleged that the Board of Trustees enacted a formal or informal policy of retaliation by its knowledge of Jones's protected speech and its failure to intervene and correct Jones's non-renewal because of that speech.

79.     Heaslip also believed that she was terminated due to her protected expression regarding COVID-19 and her association with TFA, both matters of public concern.

80.     Phillips has also been punished for speaking out on matters of public concern.

81.     On August 27, 2021, Phillips was issued a Level 1 Warning for publicly criticizing the College's response to COVID-19 on social media.

82.     Collin College's custom or practice of terminating professors who speak out on matters of public concern has garnered a significant amount of media attention and prompted demonstrations.

83.     KERA reported that "[s]everal professors have told KERA they are afraid of losing their jobs if they speak critically of the school's leadership." That same story reported that TFA President Pat Heintzelman has had more calls about Collin College than any other institution in Texas. Bill Zeeble, *Two Collin College Professors Say They're Being Dismissed After Criticizing COVID-19 Policies*, KERA NEWS (Feb. 5, 2021), *available at* https://www.keranews.org/education/2021-02-01/two-collin-college-professors-say-theyre-being-dismissed-after-criticizing-covid-19-policies.

84.     One story from February 2021 quoted Suzanne Jones as saying that the Collin College administration does not want "faculty getting together and having a collective voice." Talia Richman & Anna Caplan, *Collin College Professors Say Admin Pushing Them Out Over COVID-19 Criticism*, DALLAS MORNING NEWS (Feb. 1, 2021), *available at* https://www.dallasnews.com/news/education/2021/02/01/collin-college-professors-say-admin-pushing-them-out-over-covid-19-criticism/.

85.     At its March 2, 2021 board meeting, KERA News reported that over 100 protesters attended to demand that Collin College reinstate the professors that it fired. Hady Mawajdeh & Bill Zeeble, *Collin College Professors' Fight For COVID-19 Protocols Shifts to A Fight Over Free Speech*, KERA NEWS (Mar. 17, 2021), *available at* https://www.keranews.org/education/2021-03-17/collin-college-professors-fight-for-covid-19-protocols-shifts-to-a-fight-over-free-speech.

86.     In a story covering the protest against Collin College's "culture of fear and retaliation," at its March board meeting, *The Dallas Morning News* quoted a former teacher at Collin College who said, "Terminations and intimidation are driving away the excellent teachers responsible for so much of the student experience." Talia Richman, *'Fear Is Not a Core Value': Protesters Call on Collin College Board to Act After 3 Professors Pushed Out*, DALLAS MORNING NEWS (Mar. 3, 2021), *available at* https://www.dallasnews.com/news/education/2021/03/03/fear-is-not-a-core-value-protesters-call-on-collin-college-board-to-act-after-three-professors-pushed-out/.

87.     *The Dallas Morning News* also reported that several of the speakers told the Board of Trustees that Defendants' actions "marred the school's reputation and fostered fear among the faculty." Other speakers read statements on behalf of professors who wished to remain anonymous due to fear of retaliation. *Id.*

88.     Collin College's actions against its faculty also became a key issue in the May 1, 2021 election for three of the nine seats on the Collin College Board of Trustees. The then-challenger to board chair Bob Collins said during a candidate forum: "When a professor feels that she can't speak out against the policies when it comes to COVID-19 because of their fear or differences in beliefs from the president, then that's a problem." Bill Zeeble, *Collin College First Amendment Fight Moves to the Ballot Box With Spring Board Election*, KERA NEWS (Apr. 22, 2021), *available at* https://www.keranews.org/politics/2021-04-22/collin-college-first-amendment-fight-moves-to-the-ballot-box-with-board-elections-may-1.

89.     Based on the foregoing, it is clear that Defendants Collin College and the members of the Board of Trustees created an unconstitutional custom or practice of terminating instructors who commented on matters of public concern in ways with which the College disagrees.

90.     This unconstitutional custom or practice was facilitated by their "system" without tenure, designed to allow the termination of professors for "no reason at all."

91.     Instead of addressing or attempting to halt this unconstitutional custom or practice, the Board of Trustees moved to violate the First Amendment rights of public speakers at a June 2021 Board meeting by distributing guidelines to speakers ahead of the public comment period stating that "[a]nger … [is] not acceptable behavior during the public comment period."

92.     Moreover, the Board of Trustees appears to have already tried to keep the concerns (and potential lawsuits) of terminated professors out of public view by utilizing nondisclosure agreements, as *The Chronicle of Higher Education* reported that "Ex-employees who spoke to *The Chronicle* on the condition of anonymity say they were coerced into signing legal nondisclosure agreements on their way out the door, in exchange for severance pay or a small financial settlement." Michael Vasquez, *'That Man Makes Me Crazy' How One President Shattered Norms, Played Down Covid-19, and Sent His Critics Packing*, CHRONICLE OF HIGHER EDUCATION (Apr. 13, 2021), *available at* https://www.chronicle.com/article/that-man-makes-me-crazy.

93.     As demonstrated by Collin College's recent treatment of its professors, the corresponding media coverage, attempt to regulate the "anger" of public speakers, and use of nondisclosure agreements, Defendants have exhibited an attitude of deliberate indifference toward the First Amendment rights of its professors, like Burnett, which is a feature, not a defect, of Defendants' lack-of-tenure "system" of engaging instructors and professors.

94.     Defendants' implementation of its unconstitutional custom or practice also earned Collin College a spot on the Foundation for Individual Rights in Education's *10 Worst Colleges for Free Speech* list and caught the attention of other free speech and academic organizations.

95.     For example, in a statement concerning the terminations of Burnett, Jones, and Heaslip, PEN America, a free speech advocacy group dedicated to the freedom to write, stated that "Collin College's leaders appear to need a lesson in the First Amendment . . . . It's hard to imagine a more alarming pattern of what appears to be blatant retaliation against faculty for protected speech." *Third Professor at Texas Community College Effectively Fired After Criticizing School's Leadership*, PEN AMERICA (Mar. 2, 2021), *available at* https://pen.org/press-release/third-professor-at-texas-community-college-effectively-fired-after-criticizing-schools-leadership/.

96.     The American Association of University Professors (AAUP) has also been publicly critical of Defendants' unconstitutional custom or practice.

97.     The *Morning News* reported in May that the AAUP had sent three letters to Collin College asking it to reinstate the three professors it terminated, and quoted Trustee Stacey Donald as saying "We're not acting consistently with our core values of dignity, respect and integrity right now," regarding the terminations. Valeria Olivares & Talia Richman, *Faculty Dismissals at Collin College Under Review by National Professors Association*, DALLAS MORNING NEWS (May 20, 2021), *available at* https://www.dallasnews.com/news/education/2021/05/20/faculty-dismissals-at-collin-college-under-review-by-national-professors-association/.

98.     The AAUP also wrote that "actions by the Collin College administration suggest a pattern of indifference toward academic freedom and norms of shared governance. The actions to terminate the services of [Burnett and Jones] appear to have been taken in disregard of the AAUP-AAC&U 1940 *Statement of Principles on Academic Freedom and Tenure.*" *Investigations into Dismissals at Linfield University and Collin College*, Am. Ass'n of Univ. Professors (May 18, 2021), *available at* https://www.aaup.org/news/investigations-dismissals-linfield-university-and-collin-college#.YV8rPUZKh8b.

99.     As demonstrated by the media coverage and statements from multiple free speech and academic organizations, Defendants' custom or practice of terminating professors who speak out on matters of public concern is well-known, ongoing, and at odds with both standard practice at public colleges and the First Amendment.

***Collin College's Actions Have Caused a Deprivation of Rights, and Economic and Emotional Damage to Burnett.***

100.     As a direct and proximate result of Defendants' acts, Plaintiff has suffered irreparable injury, including being deprived of her constitutional rights to free expression.

101.     Defendants' conduct has caused Plaintiff irreparable harm by violating her First Amendment rights to free expression and precluding her from engaging in First Amendment-protected expression in connection with teaching at Collin College.

102.     Burnett suffered an adverse employment action due to Defendants' non-renewal of her teaching contract. *See Perry v. Sindermann*, 408 U.S. 593, 598 (1972).

103.     Due to Collin College's non-renewal of Burnett's teaching contract, Burnett has been prevented from earning a salary which she otherwise would have expected to earn.

104.     Defendants acted recklessly and with callous disregard for Burnett's First Amendment rights by retaliating against her for speaking on matters of public concern.

105.     Additionally, Burnett has experienced significant emotional distress, including suffering from physical manifestations of stress and anxiety.

## FIRST CAUSE OF ACTION
### *Monell* Claim Under 42 U.S.C. § 1983
### (Against Defendant Collin Community College District)

106.     Burnett re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

107.     Defendant Collin Community College District is a municipal entity subject to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Burleson v. Collin Cnty. Cmty. Coll. Dist.*, No. 4:17-CV-00749, 2019 WL 2266633 (E.D. Tex. Jan. 14, 2019).

108.     As described above, Defendant Collin Community College District engaged in a persistent, widespread custom or practice of Collin College officials, namely the Board of Trustees and President Matkin, terminating College faculty, including Burnett, because of their constitutionally protected speech on matters of public concern.

109.     Such discriminatory and unlawful termination was so common and well settled a practice as to constitute a custom or practice that fairly represents the policy of Collin Community College District. Actual or constructive knowledge of this policy is attributable both to the Board of Trustees as the College's governing body and to President Matkin, who was aware of, approved, and implemented the policy. Consistent with this policy, Defendant Collin College unlawfully and unconstitutionally terminated Burnett in violation of her First Amendment rights.

110.    Even a single decision or act by a final policymaker can give rise to municipal

liability under Section 1983. "It is well established that a municipality may be held liable for

'course[s] of action tailored to a specific situation and not intended to control decisions in later

situations,' provided that 'the decision to adopt that particular course of action is properly made

by that government's authorized decisionmakers.'" *Gonzalez v. Ysleta Ind. Sch. Dist.*, 996 F.2d

745, 754 (5th Cir. 1993) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

111.    As a legal consequence of Defendant Collin College's violation of Burnett's First

Amendment rights, Burnett is entitled to compensatory damages, and the reasonable costs of this

lawsuit, including reasonable attorneys' fees.

112.    As a legal consequence of Defendant Collin College's violation of Burnett's First

Amendment rights, Burnett is also entitled to injunctive relief mandating that Defendants rescind

its decision not to renew her employment.

## SECOND CAUSE OF ACTION
### First Amendment Retaliation under 42 U.S.C. § 1983
### (Against All Individual-Capacity Defendants)

113.    Burnett re-alleges and incorporates by reference each and every allegation set

forth in the preceding paragraphs of this Complaint.

114.    It is clearly established that "A state cannot condition public employment on a

basis that infringes the employee's constitutionally protected interest in freedom of expression."

*Connick v. Myers*, 461 U.S. 138, 142 (1983).

115.     As described above, President Matkin made the decision not to renew Burnett's contract because of her statements regarding the Vice-Presidential debate and Collin College's COVID-19 response. Despite (a) knowing that the First Amendment protected Burnett's speech and (b) having no justifiable interest in regulating or punishing Burnett's speech on matters of public concern, Defendant members of the Board of Trustees ratified that decision and its unconstitutional basis. In so doing, Defendants unconstitutionally took a calculated and adverse employment action against Burnett in retaliation for her protected speech on matters of public concern. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

116.     As a direct and proximate result of Defendants' actions as described above, Burnett was deprived of her constitutional rights. As a legal consequence of Defendants' violation of Burnett's First Amendment rights, Burnett is entitled to compensatory damages, punitive damages, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### First Amendment Retaliation under 42 U.S.C. § 1983
### (Against All Official-Capacity Defendants)

117.     Burnett re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

118.    As described above, Defendant Matkin made the decision not to renew Burnett's contract because of her statements regarding the Vice-Presidential debate and Collin College's COVID-19 response. Despite (a) knowing that the First Amendment protected Burnett's speech and (b) having no justifiable interest in regulating or punishing Burnett's speech on matters of public concern, Defendant members of the Board of Trustees ratified that decision and its unconstitutional basis. In so doing, Defendants unconstitutionally took an adverse employment action against Burnett in retaliation for her protected speech on matters of public concern. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

119.    As a direct and proximate result of Defendants' adverse employment actions, Burnett has suffered irreparable injury, including being deprived of her constitutional rights to free expression.

120.    Burnett has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to her First Amendment rights.

121.    As a direct and proximate result of Defendants' actions as described above, Burnett was deprived of her constitutional rights. As a legal consequence of Defendants' violation of Burnett's First Amendment rights, which are irreparable injuries *per se*, Burnett is entitled to injunctive relief, including but not limited to, mandating that Defendant rescind its decision to non-renew Burnett's employment.

122.    Defendants' decision to terminate Burnett's employment by refusing to renew her contract presents an ongoing injury to Burnett because the termination creates a present and ongoing risk of tarnishing Burnett's professional reputation for the remainder of her career.

## FOURTH CAUSE OF ACTION
### Declaratory Relief Under 28 U.S.C. §§ 2201, *et seq.*
### (Against All Defendants)

123.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

124.    An actual controversy has arisen and now exists between Burnett and Defendants concerning whether Defendants' nonrenewal of Burnett's employment and Defendants' custom or practice of retaliating against professors who speak out on matters of public concern violates the Constitution.

125.    Declaratory relief is appropriate where "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Environment Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016).

126.    Plaintiff demands declaratory judgment that Defendants' nonrenewal of Burnett's employment contract, and its custom or practice of terminating professors for speaking on matters of public concern, are unconstitutional abridgments of the freedom of speech. Such a declaratory judgment will clarify and settle the legal relations in issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Burnett respectfully requests that this Court enter judgment against Defendants and issue the following forms of relief:

A.      Declaring that Defendants' termination of Burnett, and its custom or practice of retaliating against professors who speak on matters of public concern, violate the First Amendment to the U.S. Constitution;

B.      Enjoining Defendants to rescind their unconstitutional action not to renew Burnett's employment contract and to end their custom or practice of terminating professors for speaking on matters of public concern.

C.      Awarding compensatory damages against Defendant Collin Community College District and the individual-capacity Defendants in an amount to be determined by the Court to compensate Burnett for Defendants' interference with her rights under the U.S. Constitution, for their interference with her ability to earn an income, and for the significant emotional distress she experienced;

D.      Awarding punitive damages against Defendants in their individual capacities for their reckless and callous disregard for Burnett's First Amendment rights;

E.      Awarding attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable law; and

F.      Ordering all further legal and equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

DATED:          October 26, 2021

Respectfully submitted,

*/s/ JT Morris*
JT Morris
TX Bar No. 2409444
JT Morris Law, PLLC
1105 Nueces Street
Austin, TX 78701
Telephone: (512) 717-5275
jt@jtmorrislaw.com

Greg H. Greubel*
PA Bar No. 321130; NJ Bar No. 171622015
Joshua T. Bleisch*
IN Bar No. 35859-53
Foundation for Individual Rights in Education
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
(215) 717-3473
greg.greubel@thefire.org
josh.bleisch@thefire.org
*Pro Hac Vice* Motions forthcoming


*Counsel for Plaintiff Lora Burnett*